No. 21-1132

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

JERMARI C. DORSEY,

*Plaintiff-Appellant*,

v.

JOHN VARGA, et al.,

*Defendants-Appellees*.

---

On Appeal from Judgment of the United States District Court
for the Northern District of Illinois, Western Division
(Hon. Iain D. Johnston, No. 3-20-cv-50030)

---

OPENING BRIEF

---

Olaniyi Solebo
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Telephone: 415.856.7000

*Attorney for Plaintiff-Appellant*

**ORAL ARGUMENT REQUESTED**

**DISCLOSURE STATEMENT**

Case No. 21-01132

Short Title: *Dorsey v. Varga*

1. The full name of every party or amicus the attorney represents in the case: Jermari C. Dorsey

2. If such party or amicus is a corporation:

   i. Its parent corporation, if any: N/A

   ii. A list of its stockholders which are publicly-held companies owning ten percent (10%) or more of the stock in the party or amicus: N/A

3. The names of all law firms whose partners or associates have appeared for the party in the district court or are expected to appear for the party in this Court: Paul Hastings LLP and Mayer Brown LLP.

Attorney's signature: *<u>/s/ Olaniyi Solebo</u>*
Olaniyi Solebo
Attorney for Plaintiff-Appellant

Date: August 8, 2022

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ..... 1

STATEMENT OF ISSUES ..... 2

STATEMENT OF THE CASE ..... 2

I. Factual Background ..... 3

II. Procedural History ..... 6

a. Mr. Dorsey's first and second complaints ..... 6

b. The third complaint and the operative complaint ..... 9

c. Mr. Dorsey appeals ..... 10

STANDARD OF REVIEW ..... 11

SUMMARY OF ARGUMENT ..... 12

ARGUMENT ..... 13

I. Mr. Dorsey's Claims Arose Out of the Same Transaction or Occurrence or Series of Transactions or Occurrences ..... 14

II. Misjoinder, Alone, Is Not a Ground for Dismissing an Action ..... 17

III. The District Court Erred in Denying Mr. Dorsey's Request for Recruitment of Counsel ..... 20

CONCLUSION ..... 25

CERTIFICATE OF COMPLIANCE ..... 26

CERTIFICATE OF SERVICE ..... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. City of Chicago*,
605 F.3d 445 (7th Cir. 2010) .......... 17

*Burns v. Lawther*,
53 F.3d 1237 (11th Cir. 1995) .......... 11

*Cruzan v. Dir., Mo. Dep't of Health*,
497 U.S. 261 (1990) .......... 13

*DirecTV, Inc. v. Leto*,
467 F.3d 842 (3d Cir. 2006) .......... 17, 19

*Eagan v. Dempsey*,
987 F.3d 667 (7th Cir. 2021) .......... 22

*Elmore v. Henderson*,
227 F.3d 1009 (7th Cir. 2000) .......... 18, 19

*File v. Martin*,
33 F.4th 385 (7th Cir. 2022) .......... 11

*James v. Eli*,
889 F.3d 320 (7th Cir. 2018) .......... 23

*Lee v. Cook County*,
635 F.3d 969 (7th Cir. 2011) .......... 1, 17

*McCaa v. Hamilton*,
893 F.3d 1027 (7th Cir. 2018) .......... 21

*Mitchell v. Kallas*,
895 F.3d 492 (7th Cir. 2018) .......... 13, 16

*Mother & Father v. Cassidy*,
338 F.3d 704 (7th Cir. 2003) .......... 11

*Perez v. Fenoglio*,
792 F.3d 768 (7th Cir. 2015) .......... *passim*

*Pruitt v. Mote*,
503 F.3d 647 (7th Cir. 2007) .......... *passim*

*Rosado v. Gonzalez*,
832 F.3d 714 (7th Cir. 2016) .......... 19

*Santiago v. Walls*,
599 F.3d 749 (7th Cir. 2010) .......... 22

*Terry v. Spencer*,
888 F.3d 890 (7th Cir. 2018) .......... 15, 16

*Washington v. Harper*,
494 U.S. 210 (1990) .......... 14

*Wheeler v. Wexford Health Sources, Inc.*,
689 F.3d 680 (7th Cir. 2012) .......... 14, 17

*Woods v. Ill. Dep't of Child. & Fam. Servs.*,
710 F.3d 762 (7th Cir. 2013) .......... 13, 18

**Statutes**

28 U.S.C.
§ 1291 .......... 2
§ 1331 .......... 1
§ 1343 .......... 1
§ 1915(a)(3) .......... 11
§ 1915(e)(1) .......... 11, 20
§ 1915A .......... 7, 12

42 U.S.C. § 1983 .......... 1, 13, 18

Prison Litigation Reform Act .......... 7

**Other Authorities**

Fed. R. App. P. 4 .......... 1

Fed. R. Civ. P.
R. 20 .......... *passim*
R. 20(a)(2) .......... 15
R. 20(a)(2)(A) .......... 12, 14
R. 21 .......... *passim*
R. 41 .......... 11
R. 54 .......... 11

U.S. Const.
Amend VIII .......... 1, 13
Amend XIV .......... 1, 13

**JURISDICTIONAL STATEMENT**[1]

Jermari Dorsey suffered severe and chronic back pain, but despite his complaints and requests for treatment, prison officials were deliberately indifferent to that pain. (App. 117–20.) Compounding matters, at the same time he was seeking treatment for his back pain, Mr. Dorsey was forced to take psychiatric medication against his will and without any medical basis. (App. 120–21.) On November 30, 2020, Mr. Dorsey filed, pro se, a complaint in the United States District Court for the Northern District of Illinois. He asserted claims arising under 42 U.S.C. § 1983. (App. 110.) Because Mr. Dorsey raised constitutional claims under the Eighth and Fourteenth Amendments, the District Court had federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. The District Court entered a final order dismissing Mr. Dorsey's complaint on January 5, 2021. (App. 129.)

Mr. Dorsey filed a notice of appeal on January 22, 2021. (App. 131.) Because the District Court received his notice of appeal within thirty days of the entry of judgment, Mr. Dorsey's appeal was timely. Fed. R. App. P. 4. This appeal is a review of a final judgment that dismissed all claims with respect to all parties. (App. 129.) Although a dismissal without prejudice is not typically appealable, "when the decision effectively precludes re-filing . . . it is treated as final and appealable." *Lee v. Cook County*, 635 F.3d 969, 972 (7th Cir. 2011). Here, the statute of limitations has run and, as a result, the District Court's dismissal, even if nominally one without

[1] Citations to the Appellant's separate appendix are designated "App."

prejudice, was effectively one with prejudice. Thus, this Court has jurisdiction under 28 U.S.C. § 1291. No issues remain before the District Court.

## STATEMENT OF ISSUES

I. Did the District Court err when it dismissed Mr. Dorsey's complaint for misjoinder even though his claims arose out of the same transaction or occurrence or series of transactions or occurrences?

II. Did the District Court err in dismissing the relevant complaint for misjoinder rather than severing the claims under Federal Rule of Civil Procedure 21?

III. Did the District Court err in denying Mr. Dorsey's request for the appointment of counsel?

## STATEMENT OF THE CASE

This case raises important procedural questions, the answers to which will determine whether one of those among the most vulnerable has access to our courts. Before the District Court, Mr. Dorsey, a prisoner in the custody of the Illinois Department of Corrections, alleged that he suffered a serious back injury that officials were deliberately indifferent toward. (App. 117–20.) He further alleged that the prison's medical officials forced him to take psychiatric medication against his will and without any medical basis. (App. 120–21.) These important challenges have not yet been considered on the merits because of the District Court's procedural rulings described below. (*See* App. 129.) Because the District Court's procedural rulings were erroneous, Mr. Dorsey seeks to have the dismissal reversed and his claims reinstated.

## I. Factual Background

On January 31, 2018, while lifting and dumping water from a mop bucket, Mr. Dorsey felt a "pop" in his lower back and sharp pain in his right leg. (App. 117.) Mr. Dorsey notified a correctional officer ("C/O Julius") about the circumstances surrounding, and the nature of, his injury. (*Id.*) Because of his pain, he asked to see a nurse. (*Id.*) C/O Julius told him to lie down, guessing that Mr. Dorsey's injury was "probably a sprain." (*Id.*)

Mr. Dorsey returned to his cell and laid down as suggested. (App. 117.) But after an hour or so, when he tried to sit up, his back hurt worse than before. (*Id.*) Mr. Dorsey took ibuprofen for his pain, but rather than subsiding, the pain increased. (*Id.*) Mr. Dorsey sought out C/O Julius again and re-expressed his wish to seek medical attention. (*Id.*) C/O Julius told Mr. Dorsey that he didn't care about his pain, that he would not send Mr. Dorsey to the healthcare unit, and directed that Mr. Dorsey go "sleep it off" or receive a disciplinary ticket. (*Id.*) Mr. Dorsey returned to his cell, but couldn't sleep through the night due to his pain. (*Id.*)

The next morning, Mr. Dorsey could barely move. (App. 117.) He asked his cellmate to get him a request slip so that he could "put in for sick call." (App. 117–18.) He filled out the form on the same day. (App. 118.) It took four days before he received a sick call pass. (*Id.*) On February 6, 2018, after taking more ibuprofen, Mr. Dorsey went to the healthcare unit, where he met with "R.N. Jane Doe." (*Id.*) The nurse asked him to perform various movements and also asked several questions about his injury. (*Id.*) After her evaluation, the nurse told him she "did not care how much pain" he was suffering. (*Id.*) She would not allow him to see a doctor

immediately. (*Id.*) Instead, she informed Mr. Dorsey that, consistent with protocol, he would need to submit another sick call after two days before he would be able to see a doctor. (*Id.*) After she gave him an eighteen-pack of ibuprofen, she told Mr. Dorsey to leave the healthcare unit. (*Id.*)

Mr. Dorsey left the healthcare unit with the impression that he would need to submit another sick call after two days. (App. 119.) Exactly two days after his appointment with the nurse—February 8, 2018—a correctional officer told him to report to "medline." (*Id.*) Though he could barely walk at this point, the officer denied Mr. Dorsey's request for transport. (*Id.*) Instead, he walked, while in significant pain, to the appointed place. (*Id.*) Upon arrival, Mr. Dorsey was handed a "clear cup with four pills in it" and was told to take them. (*Id.*) He did. (*Id.*) Ten minutes after taking the pills, he started feeling dizzy and light-headed. (*Id.*) The medication did not relieve him of back pain. (*Id.*)

The next morning, February 9, 2018, officials twice asked Mr. Dorsey to report to medline—first at 9 a.m. and again at 6 p.m. (App. 119.) Both times, Mr. Dorsey was unable to walk without pain. (*Id.*) Both times Mr. Dorsey requested transport and was denied transport. (*Id.*) And both times he was warned that if he continued to refuse to report to medline he would receive a disciplinary ticket. (*Id.*) After being refused transport the second time, Mr. Dorsey asked to speak to a lieutenant. (App. 119–120.). He explained his situation to "Lt. Andrews" who, after seeing how much pain Mr. Dorsey was in, requested a van to transport him. (App. 120.). At medline,

Mr. Dorsey was again given a clear cup that contained four pills and asked to take them, which he did. (*Id.*)

Upon his return to his housing unit, Mr. Dorsey was met by Lt. Andrews. (App. 120.) Lt. Andrews said that he called the medline nurse, who told him that Mr. Dorsey was taking "psych meds." (*Id.*) Lt. Andrew further informed Mr. Dorsey that he would not arrange any further rides for him. (*Id.*) Mr. Dorsey told Lt. Andrews that he should not have been taking "psych meds" as he had never seen a "psych doctor." (*Id.*) Mr. Dorsey also told Lt. Andrews that the medication was making him dizzy, and causing him stomach pain and headaches. (*Id.*) Nevertheless, Lt. Andrews told him that the medication was mandatory and that he would receive disciplinary tickets and be placed in "segregation" if he did not take the medication. (*Id.*) Mr. Dorsey alleged that "Doctor Doyle" is the physician who wrote the prescription for the psychiatric medication he was forced to take. (App. 121.) He never spoke with Dr. Doyle, or any other doctor other than for "routine intake," yet Dr. Doyle prescribed the psychiatric medication on February 6, 2018. (*Id.*)

After talking to Lt. Andrews, Mr. Dorsey returned to his cell, took ibuprofen for his back pain, and went to sleep because he was dizzy and suffering stomach pain. (App. 121.) He was awoken the next morning by C/O Julius, who was yelling at him for having had missed medline. (*Id.*) Mr. Dorsey asked C/O Julius to arrange for a ride for him, but C/O Julius refused. (*Id.*)

As of November 25, 2020—the day he filed the operative complaint—Mr. Dorsey still needed to take Robaxin two to three times per day and Motrin two

times a day for his back.[2] (App. 121.) He was unable to run, walk, or sit in place for an extended period without pain. Despite the passage of more than two years, the cause of his back pain had still not been diagnosed or meaningfully treated. (*Id.*)

## II. Procedural History

Given the treatment he had received, Mr. Dorsey filed suit. Among his many reasons, he wished to challenge prison officials' inadequate response and deliberate indifference to his back injury. (App. 117–22.) He sought both compensatory and punitive damages against each defendant. (App. 122.) He also wished to challenge prison officials forcing him to take psychiatric medication. (App. 120–22.) Important to Mr. Dorsey's suit—and explained in his complaint—was the fact that his being forced to take psychiatric medication delayed treatment for his back and caused him more pain given that he was forced to report to medline. (App. 121.)

### a. Mr. Dorsey's first and second complaints

Mr. Dorsey filed his first complaint and the attendant motion for recruitment of counsel in the Northern District of Illinois on January 21, 2020. (App. 1, 47.) He brought three claims in that complaint, each against various prison officials. The first claim was related to malfunctioning/broken washing machines at the prison. (App. 9–10.) He linked John Varga, Justin Wilks, the Head of Maintenance ("John Doe"), and "C/O Julius" to this claim. (*Id.*). The second claim was related to his back injury and he linked "C/O Julius," "RN Jane Doe," Wexford Health Sources, Inc., "Dr. Doyle," "Lt. Andrews," "Sgt. Gardner," and "NP Tuell." (App. 13.) The third claim was related

---

[2] The District Court explained that Robaxin is a prescription muscle relaxer and that Motrin (or ibuprofen is an over-the-counter anti-inflammatory medication. (App. 75 n. 1.)

to the process owed to Mr. Dorsey in disciplinary proceedings. (App. 21.) He linked Devin L. Shafer, James Martens, Debbie Knauer, and John R. Baldwin to the third claim. (*Id.*)

The case was first assigned to Judge Pallmeyer who, as required by the Prison Litigation Reform Act (PLRA), screened the complaint for frivolity, maliciousness, or failure to state a claim. *See* 28 U.S.C. § 1915A. Judge Pallmeyer construed Mr. Dorsey's complaint to present three issues: (1) whether there was a hazard posed by the prison's malfunctioning or broken washing machines; (2) whether the lack of medical care he received for his back injury constituted deliberate indifference; and (3) whether he failed to receive adequate process in connection with disciplinary proceedings that were initiated when he refused to take the prescribed "psych meds." (App. 52.)

Judge Pallmeyer read the claims in Mr. Dorsey's first complaint as involving separate conduct by separate groups of defendants. (App. 52.) She further determined that the claims were "legally and factually distinct from each other." (*Id.*) As such, Judge Pallmeyer dismissed the complaint for misjoinder on June 15, 2020. (*See Id.* ("Plaintiff may not use this single case as a vehicle to litigate all three of his unrelated claims, even if there is some overlap in the named Defendants.")) Judge Pallmeyer instructed Mr. Dorsey to, among other things, "pick the claim he wishe[d] to pursue." (*Id.*) Judge Pallmeyer also denied Mr. Dorsey's motion for attorney representation because the case was in its "early stages" and because Mr. Dorsey appeared "capable of representing himself." (App. 53.)

Mr. Dorsey filed his second complaint and second motion for recruitment of counsel on July 6, 2020. (App. 54, 71.) In attempted accordance with Judge Pallmeyer's instructions, Mr. Dorsey streamlined his allegations. (App. 75.) He also "attempted to address the improper joinder issue" by dropping reference to the hazard posed by the prison's malfunctioning or broken washing machines, (*id.*), excluding any mention of the due process violations related to his disciplinary proceedings, (*id.*), and by omitting several defendants named in his first complaint from his second. (*Compare* App. 1, *with* App. 54 (dropping John Varga, Justin Wilks, the Head of Maintenance, Sgt. Gardner, NP Tuell, Devin L. Shafer, James Martens, Debbie Knauer, and John Baldwin as defendants).) Unlike his first complaint, his second complaint sued only C/O Julius, R.N. Jane Doe, Wexford, and Lt. Andrews for deliberate indifference to Mr. Dorsey's back injury. Presenting a new claim, Mr. Dorsey sued Dr. Doyle and Wexford for forcing him to take psychiatric medication.

Nevertheless, on August 7, 2020, Judge Pallmeyer again dismissed, without prejudice, his complaint for misjoinder. (App. 73.) In the District Court's view, though Mr. Dorsey had limited his complaint to discussion of the medical care he received after his back injury and the psychiatric medication he was forced to take, the claims were still legally and factually distinct. (App. 75.) Judge Pallmeyer again instructed Mr. Dorsey to either elect to proceed on his claim that he was denied adequate treatment for his back pain or allege that he was forced to take "psych meds" and suffered resultant harm. (*Id.*) The District Court denied Mr. Dorsey's second motion

for recruitment of counsel for substantially the same reasons as it denied the first. (App. 76.)

**b. The third complaint and the operative complaint**

On September 4, 2020, Mr. Dorsey filed his third complaint and third motion for recruitment of counsel. (App. 77, 98.) He also submitted a letter to the District Court explaining that his third complaint was largely the same as his second given that he had difficulty accessing the prison law library and because he was unclear about what the District Court was asking of him. (App. 96.)

On September 29, 2020, Mr. Dorsey's case was reassigned to Judge Iain Johnston. (App. 100.) And on October 8, 2020, Judge Johnston struck Mr. Dorsey's third complaint from the record and denied without prejudice his third motion for recruitment of counsel. (App. 108.) Citing Judge Pallmeyer's prior order, Judge Johnston instructed Mr. Dorsey that if he wished to proceed with his action, "***he must pick the claim he wishes to pursue in this action***; he may elect to proceed on his claim that he was denied medical treatment for his back pain, or, he may allege that he was forced to take 'psych meds' and suffered harm as a result." (App. 108–09.) Judge Johnston denied the motion for recruitment of counsel for similar reasons to those in Judge Pallmeyer's prior orders—the early stage of the litigation and Mr. Dorsey's apparent ability to represent himself. (App. 109.)

On November 30, 2020, Mr. Dorsey filed his fourth and final complaint and motion for recruitment of counsel. (App. 110, 125.) In this complaint, he lists as defendants C/O Julius, R.N. Jane Doe, Wexford Health Sources, Inc., Lt. Andrews, and Dr. Doyle. The claim of deliberate indifference to his back injury was made

against C/O Julius, R.N. Jane Doe, Wexford and Lt. Andrews. He names only Dr. Doyle and Wexford in his claim that he was forced to take psychiatric medication.

On January 5, 2021, in a short order, Judge Johnston dismissed the case after concluding Mr. Dorsey had failed to comply with Judge Pallmeyer's August 7 order and his October 8 order. (App. 129.). Judge Johnston noted that dismissal was warranted because, in the District Court's view, the relevant complaint was nearly identical to the prior version and because the relevant complaint did not attempt to address the misjoinder issue. (*Id.*) Importantly, the District Court did not suggest that there was anything wrong with the *merits* of Mr. Dorsey's suit. (*Id.*) Rather, the dismissal was on procedural grounds—misjoinder and failure to pick which claims to proceed—and the dismissal was without prejudice. (*Id.*) The motion for recruitment of counsel was terminated as moot and judgment was entered on the same day. (*Id.*)

Across his complaints, Mr. Dorsey was consistent in presentation of the facts: he suffered severe and chronic back pain to which prison officials were deliberately indifferent and he was unjustly forced to take psychiatric medication. (*See* App. 13–21, 61–66, 85–91, 107–11.)

**c. Mr. Dorsey appeals**

Mr. Dorsey filed notice of his appeal on January 22, 2021. (App. 131.) Unable to afford this Court's filing fee, Mr. Dorsey moved to proceed *in forma pauperis* on May 6, 2021. (App. 132.) Judge Johnston denied this motion after certifying that Mr. Dorsey's appeal was not taken in good faith, in part because the motion did not raise "a substantial issue meriting appellate review." (App. 142; *see also* 28 U.S.C.

§ 1915(a)(3).) This Court determined that the bad-faith determination was in error and ordered appellate counsel be appointed. (App. 143–44.)

**STANDARD OF REVIEW**

This Court reviews a district court's dismissal order *de novo*. *File v. Martin*, 33 F.4th 385, 389 (7th Cir. 2022). The interpretation of the Federal Rules of Civil Procedure presents a question of law that this Court reviews *de novo*. *See Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003) (reviewing *de novo* district court's interpretation of Federal Rules of Civil Procedure 41 and 54); *see also Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995) (per curiam) ("Interpreting the Federal Rules of Civil Procedure presents a question of law subject to *de novo* review."). This Court construes pro se pleadings liberally, and thus must take the allegations in the relevant complaint as true and draw all reasonable inferences in Mr. Dorsey's favor. *See Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

In a civil case, a district court presented with a request for pro bono counsel under 28 U.S.C. § 1915(e)(1) must examine whether the plaintiff has made a reasonable attempt to obtain counsel and whether, given the difficulty of the case, the plaintiff is competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 654–56 (7th Cir. 2007) (en banc). This Court reviews the denial of a motion for recruitment of counsel for abuse of discretion, "asking not whether the district court's decision was right, but whether it was 'reasonable.'" *Perez*, 792 F.3d at 784. Even when a district court abuses its discretion, this Court will not reverse unless the affected party can demonstrate prejudice—that is, that "there is a reasonable likelihood that the

presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659.

## SUMMARY OF ARGUMENT

As a ward of the State of Illinois, Mr. Dorsey is entitled to have his severe and chronic pain addressed without the indifference shown by the defendants. Mr. Dorsey also cannot be coerced into taking psychiatric medication against his will. He brought these serious complaints to the District Court but, because of the District Court's procedural errors, Mr. Dorsey was not allowed to proceed.

Mr. Dorsey urges this Court to overturn the District Court's dismissal for many reasons, including: First, Mr. Dorsey's final complaint—the operative complaint—shouldn't have been dismissed because neither the claims nor the defendants were misjoined. Under Federal Rule of Civil Procedure 20, multiple claims against multiple defendants are properly joined where the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2)(A). Here, there's a logical relationship between Mr. Dorsey's back injury and psychiatric medication claims. Assuming, as this Court must, that the facts in his complaint are true, had Mr. Dorsey not injured his back, he would not have sought treatment. *See Perez*, 792 F.3d at 776 (reviewing facts alleged in complaint dismissed under § 1915A as true and drawing all reasonable inferences in the plaintiff's favor). And it was only while he was seeking treatment for his back that prison officials begun forcing him to take psychiatric medication.

Second, the District Court erred in dismissing Mr. Dorsey's case due to the supposed misjoinder. Under Federal Rule of Civil Procedure 21, misjoinder is not a ground for dismissing an action. As provided by the rule, the District Court, *sua sponte*, could have severed the claims on its own or dismissed unrelated defendants, but it could not and should not have dismissed the action. *See* Fed. R. Civ. P. 21. By dismissing Mr. Dorsey's action, the District Court compromised his ability to refile his claims because the Illinois statute of limitations for 42 U.S.C. § 1983 claims had already run. *See Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013) ("[T]he limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13–202.").

Finally, the District Court erred in denying Mr. Dorsey's repeated requests for counsel. His inability to understand the District Court's instructions belied the District Court's conclusion that he was capable of representing himself.

## ARGUMENT

Though he is a ward of the state, Mr. Dorsey cannot be deprived of needed medical treatment. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("If prison medical staff exhibit deliberate indifference to an inmate's serious medical condition, they subject her to unnecessary and wanton pain and suffering and thereby run afoul of the Eighth Amendment.") Nor can he be forced to take medication against his will. *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in

refusing unwanted medical treatment."); *Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (recognizing that, under the Due Process Clause of the Fourteenth Amendment, a prisoner possessed "a liberty interest in avoiding the unwanted administration of antipsychotic drugs."). Mr. Dorsey should have had his day in court but the District Court's procedural errors prevented that. This Court should reverse so that Mr. Dorsey's claims can proceed to the merits.[3]

## I. Mr. Dorsey's Claims Arose Out of the Same Transaction or Occurrence or Series of Transactions or Occurrences

Rather than being legally and factually distinct, Mr. Dorsey's claims are focused on a series of events that stemmed from one issue: his back injury and the medical care (or lack thereof) that he received. Federal Rule of Civil Procedure 20 permits the joinder of claims against multiple defendants where the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(2)(A). Said differently, "a complaint may present claim # 1 against Defendant A, and claim # 2 against Defendant B, only if both claims arise out of the same transaction, occurrence, or series of transactions or occurrences." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (internal quotation marks omitted).

[3] Importantly, in the order dismissing Mr. Dorsey's operative complaint the *merits* of his claims were not considered. (App. 129.) Rather, the dismissal was on procedural grounds. (*Id.*) And, though those procedural grounds were erroneous as discussed in this brief, it is telling that the District Court intended to allow Mr. Dorsey to *choose* what claims he wanted to proceed with, reflecting they both stated a claim. This appeal thus focuses on the procedural errors and the consequences that flow from them.

Liberally construed, Mr. Dorsey's complaint alleges that after he injured his back, prison officials were deliberately indifferent to both his injury and his multiple requests for treatment. (App. 13–16.) At the same time *and factually related to* prison officials' deficient response to his back injury, Mr. Dorsey alleges that they began forcing him to take psychiatric medication against his will. (App. 16–17.) Moreover, Mr. Dorsey makes clear that he was initially under the mistaken belief that the psychiatric medication was meant to treat his back injury and that he suffered additional harm due to the psychiatric medication. (*Id.*) Put simply, Mr. Dorsey's back injury is what led him to seek medical treatment and it was only while he was seeking treatment for his back that prison officials began forcing him to take psychiatric medication. (App. 9–12.) The harms are thus intertwined and there is a logical relationship between Mr. Dorsey's deliberate-indifference claim and his claim that he was improperly forced to take psychiatric medication.

The operative complaint here is similar to complaints this Court has held comport with Rule 20. Take for example, the complaint in *Terry v. Spencer*, 888 F.3d 890, 892 (7th Cir. 2018), where the appellant alleged that prison officials were both deliberately indifferent to a tumor on his neck and prevented him from timely filing suit. There too, the district court dismissed the complaint after ruling that the claims were improperly joined because the claims and defendants were unrelated. *Id.* On appellate review and after "[g]enerously constru[ing]" the plaintiff's complaint, this Court held that although the two sets of claims were against different defendants, the claims were nevertheless related because they arose out of the "same

set of connected transactions." *Id.* at 894 (internal quotation marks omitted). So too here.

The result in *Mitchell v. Kallas*, 895 F.3d 492 (7th Cir. 2018) was much the same as that in *Terry*. In *Mitchell*, this Court held that because the appellant's complaint stemmed from one issue—her inability to get hormone therapy while in state custody—the complaint was "well within the bounds of Rule 20(a)(2)." *Id.* at 503. The Court further stressed that the fact that the appellant had "different theories of liability against the different defendants" did not "diminish the fact that her claims are sufficiently related" given that she had alleged a "continuous period in which two sets of defendants denied or interfered with her access to needed medical treatment." *Id.*

Like the appellants in *Terry* and *Mitchell*, Mr. Dorsey alleged two claims against two sets of defendants with the claims connected by the same set of transactions. The deliberate indifference to his back injury was related to and compounded by his being forced to take psychiatric medication, which would not have started, he believes, without his reporting of his back injury. *See Terry*, 888 F.3d at 892. And because the claims are connected, Mr. Dorsey's claims are not diminished by the fact that that he has different theories of liability against the different defendants. *See Mitchell*, 895 F.3d at 503.

In sum, the District Court's inflexible interpretation of Mr. Dorsey's claim does not comport with this Court's precedent or with Rule 20. This Court should reverse the judgment of the District Court on that basis alone.

## II. Misjoinder, Alone, Is Not a Ground for Dismissing an Action

Even if this Court were to determine that Mr. Dorsey's claims are not part of the same transaction, occurrence, or series of transactions and occurrences, reversal is appropriate because misjoinder alone is not an appropriate ground for dismissal under Federal Rule of Civil Procedure 21. This Court has reversed district courts that have improperly dismissed cases due to misjoinder on many occasions. For example, in *Lee*, 635 F.3d at 971, this Court held that a district court violated Rule 21 when it in dismissed the original suit for misjoinder and directed the plaintiff to file new suits. And in *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010), this Court stated plainly that "misjoinder of parties is never a ground for dismissing an action."

This Court's caselaw leads in one direction. Violations of Rule 20, if any, should be cured "by severance" or solved by "dismissing the excess defendants" pursuant to Rule 21, not by dismissal of the action. *Wheeler*, 689 F.3d at 683; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (Under Rule 21 "the court has two remedial options: (1) misjoined parties may be dropped . . . or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'"). The reason for this rule is straightforward: "[w]hen a federal civil action is dismissed without prejudice, the statute of limitations runs continuously." *Lee*, 635 F.3d at 971. As a result, when a suit is dismissed without prejudice, "the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Id.* at 971–72. Said another way, "a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed." *Id.* at 972 (quoting

*Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)). When a suit is dismissed without prejudice and the statute of limitations has run, the dismissal is effectively with prejudice. *Elmore*, 227 F.3d at 1011.

Rather than comporting with Rule 21, the District Court dismissed Mr. Dorsey's action entirely, citing Mr. Dorsey's supposed failure to comply with its prior instruction to choose which of his claims to proceed with. (App. 129.) Though the District Court did not explicitly state that it was dismissing the action pursuant to Rule 21, it was implied. The District Court had twice conditioned the future of Mr. Dorsey's action on the curing of the supposed misjoinder. (*See* App. 108–09,129.) Viewed from any direction, the District Court's dismissal was premised on the supposed misjoinder and Mr. Dorsey's failure to understand (or to accept) the District Court's prior orders related to it.

Compounding matters, Mr. Dorsey was harmed by the District Court's dismissal because, at the time his case was dismissed, the two-year statute of limitations on 42 U.S.C. § 1983 had run. *See Woods*, 710 F.3d at 766 ("[T]he limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13–202."). The actions giving rise to Mr. Dorsey's suit occurred in late January and early February of 2018, nearly three years before the District Court dismissed the case and entered judgment.[4]

[4] Though Illinois has a savings statute, *see* 735 Ill. Comp. Stat. Ann. 5/13-217, it would not apply here either. Even assuming Mr. Dorsey's circumstances fit into one of the savings statute's criteria, the savings statute gives plaintiffs a year from dismissal to refile. Mr. Dorsey's case was dismissed on January 5, 2021, after which he promptly filed for appeal.

Requiring reversal, Mr. Dorsey cannot claim equitable estoppel. Equitable estoppel only "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (internal quotation marks omitted). The defendants here have not gone "above and beyond the wrongdoing" upon which [Mr. Dorsey's] claim is founded, "to prevent, by fraud or deception" him from suing on time. *See id.* (internal quotation marks omitted). Nor could Mr. Dorsey claim equitable tolling. Equitable tolling is governed by Illinois law and applies where "the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way." *Id.* at 717 (internal quotations omitted). The defendants have not misled Mr. Dorsey and he was not prevented from asserting his rights before the limitations period ran.

In short, even assuming that the claims and defendants in the relevant complaint were misjoined, severance or dismissal of the excess defendants should have been the proper remedy here. By dismissing the action entirely, the District Court violated Rule 21, compromised Mr. Dorsey's ability to bring his claims, and affected his substantial rights. *DirecTV, Inc. v. Leto*, 467 F.3d 842, 846 (3d Cir. 2006) ("[T]he discretion to drop and dismiss claims against misjoined defendants under Rule 21 is abated when it 'prejudic[es] any substantial right' of plaintiffs."); *Elmore,* 227 F.3d at 1012 ("[T]he district court is duty-bound to prevent [statute of limitations consequences] . . . by severing rather than dismissing claims. If it fails in that duty,

---

Thus, because more than a year and half has passed since the dismissal of his case, Mr. Dorsey cannot invoke the savings statute's one-time right to refile his complaint.

the remedy is appeal."); *see also Wilson v. Bruce*, 400 F. App'x 106, 108 (7th Cir. 2010) (affirming dismissal where District Court conditioned plaintiff's right to proceed on his curing of a joinder issue because the error was harmless and did not affect his substantial rights). Reversal with instructions to reinstate the suit is therefore necessary.

## III. The District Court Erred in Denying Mr. Dorsey's Request for Recruitment of Counsel

Even if the District Court did not err in its joinder determination or in its decision to dismiss the suit, this Court should reverse because the District Court erred when it denied Mr. Dorsey's request for recruitment of counsel. In civil cases, district courts have discretion to recruit counsel for an indigent defendant. *Perez*, 792 F.3d at 784; 28 U.S.C. § 1915(e)(1). When a plaintiff requests pro bono counsel under § 1915(e)(1), district courts must inquire whether: (1) the indigent plaintiff has "made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case . . . the plaintiff appear[s] competent to litigate it himself." *Pruitt*, 503 F.3d at 654.

Looking to the two-part test, the District Court below abused its discretion by failing to account for new information when it became available. *See Pruitt*, 503 F.3d at 660. While the District Court correctly concluded that Mr. Dorsey made reasonable attempts to obtain counsel (the first element), the District Court did not account for new information as to his competence (the second element) when Mr. Dorsey continued to move for the appointment of counsel. (*See* App. 49, 73, 108, 127.)

As this Court has explained, within the second inquiry is a further "two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself." *Pruitt*, 503 F.3d at 655. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.*

In its prior orders, the District Court explained that it was denying Mr. Dorsey's request for recruitment of counsel for two reasons: the early stage of the litigation and Mr. Dorsey's level of education. (App. 53, 76, 109.) According to the District Court, because Mr. Dorsey was only tasked with rewriting his complaint, that task was not beyond someone with "some college" education, who was being given specific instructions to amend his complaint, and whose prior submissions had been "generally clear and coherent." (App. 53, 76, 109.)

Setting aside whether the District Court's early denials of Mr. Dorsey's request for counsel were an abuse of discretion, its later decisions were when the District Court dismissed Mr. Dorsey's third complaint without accounting for changing circumstances. In denying Mr. Dorsey's first two motions, the District Court acted on the limited information it had: Mr. Dorsey's level of education and its evaluation of his complaints. *See Pruitt*, 503 F.3d at 655 ("The inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question."); *McCaa v. Hamilton*, 893 F.3d 1027, 1032 (7th Cir. 2018) ("Courts should consider any relevant evidence raised in support of the request

for counsel, as well as the pleadings, communications from, and any contact with the plaintiff." (internal quotation marks omitted)).

But, at the same time he submitted the third motion, Mr. Dorsey alerted the District Court to additional information that should have altered its analysis. In a letter to the District Court, Mr. Dorsey explained that he was not able to access the prison law library to do research, could not understand what the District Court was asking of him, and for his third complaint, "basically just wrote the same that [he knew] to be true in the order that it happened to me and dropped some with each complaint but still haven't the slightest clue what to really do." (App. 96.)

Instead of responding to Mr. Dorsey's new information, the District Court repeated what it had already said: that the case was "in its early stages," that Mr. Dorsey had some college education and thus appeared "capable of representing himself," and that given the District Court's "specific and detailed instructions," Mr. Dorsey should not have trouble limiting his claims and preparing amended pleadings. (App. 109.). Thus, by ignoring Mr. Dorsey's new information, the District Court failed to reconsider his competence to litigate his claims and thus abused its discretion. *See Eagan v. Dempsey*, 987 F.3d 667, 684 (7th Cir. 2021) (reversing where district court failed to reevaluate plaintiff's capabilities after a change in circumstances and holding that such a failure was "a clear deviation from *Pruitt*'s template"); *Santiago v. Walls*, 599 F.3d 749, 765 (7th Cir. 2010) ("Given the district court's failure to consider all these factors in evaluating [plaintiff's] request for

counsel, we must conclude . . . that we cannot let the judgment stand even under the deferential standard of review that we employ in these cases.”).

The District Court also failed to consider the complexity of Mr. Dorsey’s case. As his Court has already recognized, pro se litigants “often face difficulty when litigating constitutional claims that involve the state of mind of the defendant, such as those involving deliberate indifference.” *James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018) (internal quotation marks omitted). Deliberate indifference claims are among the more “nuanced” legal claims and “even a relatively sophisticated litigant may find it difficult to identify and present the right type of evidence.” *See id.* at 327–28 (internal quotation marks omitted). Despite this guidance, the District Court did not even consider the complexity of Mr. Dorsey’s claims. (*See* App. 49, 73, 108.) This failure too was an abuse of discretion.

The severity of Mr. Dorsey’s injury and the serious nature of his claim regarding the psychiatric medication, further weighed in favor of the appointment of pro bono counsel. As this Court has recognized, when inmates allege “an objectively serious medical condition, it may be better to appoint counsel—so that he or she can investigate and flesh out any claim that may exist—than to dismiss a potentially meritorious claim and leave the prisoner in harm’s way.” *Perez*, 792 F.3d at 784. The District Court here did the opposite. In spite of Mr. Dorsey’s severe and chronic back pain and his serious allegation regarding unwanted medical treatment, the District Court denied Mr. Dorsey counsel and dismissed his claim.

Finally, the District Court's errors prejudiced Mr. Dorsey. "Even if a district court's denial of counsel amounts to an abuse of its discretion, we will reverse only upon a showing of prejudice." *Pruitt*, 503 F.3d at 659. "[A]n erroneous denial of pro bono counsel will be prejudicial if there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Id.* It's beyond doubt that an attorney would have made a difference in the outcome here. An attorney would have argued that the parties and claims in Mr. Dorsey's complaint were not misjoined but rather that they were part of the same transaction or occurrence. Appointed counsel could have argued that dismissal was an improper remedy for misjoinder. And an attorney could have warned the District Court that the statute of limitations would run from whenever the cause of action accrued and that dismissal would compromise Mr. Dorsey's ability to refile.

Mr. Dorsey—"stripped of virtually every means of self-protection and foreclosed from access to outside aid"—requested appointed counsel to assist him in vindicating his rights. *See Perez*, 792 F.3d at 785. The District Court abused its discretion by failing to thoroughly consider his competency to litigate his very serious claims in light of new information. Because Mr. Dorsey was prejudiced by the District Court's errors, this Court must reverse.

## CONCLUSION

The Court should reverse the dismissal of Mr. Dorsey's claims and remand the case for further proceedings.

Dated: August 8, 2022

Respectfully submitted,

/s/ *Olaniyi Solebo*
Olaniyi Solebo
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Telephone: (415) 856-7000

*Attorney for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief:

i. Complies with the type-volume limitation of Rule 32(a)(7)(B) and Seventh Circuit Rule 32(c) because it contains 6,711 words, excluding the parts of the brief exempted by Rule 32(f); and

ii. Complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) and Seventh Circuit Rule 32(b) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 12 points or larger in the body and 11 points or larger in footnotes.

DATED: August 8, 2022

*/s/ Olaniyi Solebo*
Olaniyi Solebo
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that, on August 8, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

I also certify that fifteen copies of the Plaintiff-Appellant's Brief will be delivered by hand to the U.S. Court of Appeals for the Seventh Circuit within seven days of electronic filing.

DATED: August 8, 2022

*/s/Olaniyi Solebo*
Olaniyi Solebo
Attorney for Plaintiff-Appellant

# APPELLANT'S REQUIRED SHORT APPENDIX

**CIRCUIT RULE 30(d) STATEMENT**

The undersigned hereby certifies, pursuant to Circuit Rule 30(d), that this Appendix to Appellant's Brief contains all materials required by Circuit Rules 30(a). The Appendix materials are in searchable digital form where available.

Attorney's signature: *<u>/s/ Olaniyi Solebo</u>*
Olaniyi Solebo
Date: August 8, 2022

## TABLE OF CONTENTS

District Court's January 5, 2021 Order ........................................................... 1

District Court's January 5, 2021 Judgment ..................................................... 2

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Jermari Dorsey (K-61999), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 50030 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| John Varga, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On October 8, 2020, the Court struck Plaintiff's amended complaint because it was nearly identical to the prior version of the complaint (which had been dismissed without prejudice on June 15, 2020 because it suffered from a joinder problem). [31] At that time, the Court explicitly instructed Plaintiff that if he wished to proceed with this action, he must pick the claim he wished to pursue in this action. [*See id.* at pgs. 1-2, stating that "[Plaintiff] must pick the claim he wishes to pursue in this action; he may elect to proceed on his claim that he was denied medical treatment for his back pain, or, he may allege that he was forced to take 'psych meds' and suffered harm as a result."] Plaintiff was given until December 1, 2020 to submit an pleading in accordance with the Court's October 8 and August 7, 2020 orders and advised that failure to comply would result in dismissal of this case. Plaintiff subsequently submitted an amended pleading, which is nearly identical to the prior version of the complaint (which, as noted above, was stricken from the record). Plaintiff's pleading does not attempt to cure (or otherwise address) the joinder issue discussed in the prior orders of this Court. Accordingly, the case is dismissed without prejudice based on Plaintiff's failure to comply with the prior orders of this Court. All pending motions [34][35] are terminated as moot. Final judgment shall enter. Case closed.

Date: January 5, 2021 By: ______________________________

Iain D. Johnston
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS**

Jermari Dorsey (K-61999),

Plaintiff(s),

v.

John Varga, et al.,

Defendant(s).

Case No. 20 C 50030
Judge Iain D. Johnston

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒ other: Judgment of dismissal without prejudice entered. Case closed.

---

This action was *(check one)*:

☐ tried by a jury with Judge presiding, and the jury has rendered a verdict.
☐ tried by Judge without a jury and the above decision was reached.
☐ decided by Judge on a motion

Date: 1/5/2021

Thomas G. Bruton, Clerk of Court

\s\Yvonne Pedroza, Deputy Clerk

☐

## CERTIFICATE OF SERVICE

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on ____________________, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/____________________________________

☑

## CERTIFICATE OF SERVICE

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on August 8, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
| --- | --- |
| Wexford Health Sources, Inc. | 501 Holiday Drive, Foster Plaza Four, Pittsburgh, PA 15220 |

s/ Olaniyi Solebo